582 A.2d 1349

**COMMONWEALTH of Pennsylvania**

v.

**Terry L. GALLAGHER, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 20, 1990.

Filed Dec. 3, 1990.

72

Charles D. Younger, Asst. Public Defender, Boyertown, for appellant.

George C. Yatron, Dist. Atty., Reading, for Com.

Before ROWLEY, MONTGOMERY and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment of sentence for theft of services. Appellant contends that there was insufficient

evidence to convict him. For the following reasons, we agree and, accordingly, vacate the judgment of sentence and order appellant discharged.

On February 23, 1989, Patricia Gallagher, appellant's mother, and co-owner of 408 Orange Street, Reading, PA, requested the UGI Corporation ("UGI") to shut off gas service to the premises. N.T. at 78, 79. In response, UGI, on that date, turned off the gas and locked the gas meter at 408 Orange Street. *Id.* at 41. Subsequently, on April 5, 1989, UGI returned to 408 Orange Street to investigate a report of gas theft. *Id.* at 52–53. UGI discovered that the security lock on the meter had been removed, and gas was illegally being supplied to the building. *Id.* at 60. On May 19, 1989, appellant was arrested and charged with theft of services, causing or risking catastrophe, criminal mischief, and two counts of criminal conspiracy in connection with the tampering of the gas meter and gas theft at 408 Orange Street.[1]

A jury trial was held on September 6–7, 1989. At the close of the Commonwealth's case, appellant demurred on all of the charges. The judge sustained the demurrer on all counts except theft of services. The jury found appellant guilty of theft of services, 18 Pa.C.S.A. § 3926, for fifty dollars ($50.00) or more, but less than two hundred dollars ($200.00). On October 18, 1989, after appellant's post-verdict motions had been dismissed, the trial court sentenced appellant to two (2) to twenty-four (24) months imprisonment.[2] This timely appeal followed.

Appellant argues that the evidence was insufficient to support his conviction for theft of services. Specifically, appellant contends that the Commonwealth failed to prove beyond a reasonable doubt that appellant obtained gas services improperly. *See* Appellant's Brief at 9. Appellant also contends that the Commonwealth presented no evi-

1. *See* 18 Pa.C.S.A. §§ 3926, 3302, 903, 3304.

2. This sentence was imposed consecutively to a sentence appellant is serving on another matter. *See* N.T. October 18, 1989, Sentencing Proceedings, at 10–11.

dence placing appellant at the scene when the meter tampering occurred. Even if the Commonwealth showed that appellant lived on the premises periodically, appellant argues, his mere presence is insufficient to support a guilty verdict. We agree.

The test for reviewing a sufficiency claim is well-settled: [W]hether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt.... This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt....

*Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988) (citations omitted), *cert. denied,* —— U.S. ——, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). *See also Commonwealth v. Jackson,* 506 Pa. 469, 472–73, 485 A.2d 1102, 1103 (1985); *Commonwealth v. Brady,* 385 Pa.Super. 279, 282, 560 A.2d 802, 804 (1989).

Section 3926 of the Crimes Code, 18 Pa.C.S.A. provides, in relevant part:

(a) Acquisition of services.—

(1) A person is guilty of theft if he intentionally obtains services for himself or for another which he knows are available only for compensation, by deception or threat, by altering or tampering with the public utility meter or measuring device by which such services are delivered or by causing or permitting such altering or tampering, by making or maintaining any unauthorized connection, whether physically, electrically or inductively, to a distribution or transmission line ... or by false token or other trick or artifice to avoid payment for the service.

(2) As used in this section, the word "service" includes ... the supplying of commodities of a public utility nature such as gas, electricity, steam and water, and

telephone service. The term "unauthorized" means that payment of full compensation for service has been avoided, or has been sought to be avoided, without the consent of the supplier of the service.

\* \* \* \* \* \*

(b) Diversion of services.—A person is guilty of theft if, having control over the disposition of services of others to which he is not entitled, he knowingly diverts such services to his own benefit or to the benefit of another not entitled thereto.

*Id.* § 3926(a)–(b). In addition, § 3926 provides that a person may be inferred to have unlawfully acquired services under the following circumstances:

(d) Inferences.—

(1) Any person having possession of or access to the location of a public utility meter or service measuring device which has been avoided or tampered with so as to inhibit or prevent the accurate measurement of utility service and who enjoys the use of or receives the benefit from the public utility service intended to be metered or measured by the public utility meter or measuring device so avoided or tampered with may be reasonably inferred to have acted to avoid or tamper with the public utility meter or measuring device with the intent to obtain the public utility service without making full compensation therefor.

*Id.* § 3926(d)(1).

■ Thus, appellant may be inferred to have unlawfully acquired services if the Commonwealth proves *all* of the following: (1) that appellant had possession of or access to the location of the meter or measuring device; (2) that the meter or measuring device was avoided or tampered with so as to inhibit or prevent accurate measurement of the utility service; and (3) that appellant enjoyed or received the benefit from the public utility service intended to be metered or measured by the meter or measuring device which was tampered with. *Cf. Commonwealth v. LaRocca*, 25 Pa.D. & C.3d 620 (1981).

■ Here, the Commonwealth presented evidence that approximately one and one half months after the gas was shut off at 408 Orange Street, the gas meter had been tampered with and the meter was in use. N.T. at 41, 54. Several gas company employees testified as to their roles in shutting off the gas and discovering the gas theft, but none identified appellant as having been at the scene. Patricia Gallagher, appellant's mother, also testified as a Commonwealth witness. She stated that appellant had her permission, along with his girlfriend and another friend, to live in the building, and he had lived at 408 Orange Street intermittently between February 23 and April 5, 1989. *Id.* at 79. However, Ms. Gallagher was unable to affirmatively state that appellant was living at 408 Orange Street on or about the date the meter tampering was discovered. *Id.* at 80–81. Moreover, on recross-examination she revealed that ten or more people lived on the premises during that time period, and she was not sure who lived there at the relevant time:

Q: Your son wasn't living at 408 Orange Street on April 5th, 1989, was he?

A: I don't know. I don't remember the dates.

Q: So you can't testify that he was living there at that time?

A: Everybody was in and out so often, you never knew who was livin' there.

Q: Okay. Well, that's what I'm saying. You can't say for sure that he was living there on that date?

A: No.

*Id.* at 81. The Commonwealth presented no other evidence regarding whether or when appellant resided on the premises, and no evidence tending to show that he tampered with the meter, or aided others in tampering with the meter.

As this review of the evidence reveals, the Commonwealth presented no direct evidence that *appellant* was responsible for the theft of the gas services. Because there was no direct evidence, the jury apparently convicted appellant by drawing the inference as provided in § 3926(d)(1). In other words, because Patricia Gallagher placed appellant

at the scene, the jury may have concluded that appellant had access to the location of the gas meter. *See* 18 Pa.C. S.A. § 3926(d)(1). The evidence also showed that the meter at 408 Orange Street was tampered with and, thus, prevented an accurate measurement of UGI's services. *See id.* However, even if we assume that the statutory inference may have allowed for a finding that appellant was present on the premises, the record contains no evidence to support an inference that he "enjoyed the use of or received the benefit" of the gas service intended to be measured by the meter. *See id.* The Commonwealth's evidence, weak at best, merely showed that appellant *may* have lived at 408 Orange Street from time to time during the weeks between the gas shut-off and the discovery of gas theft. No evidence placed appellant on the premises at the time the meter was tampered with or the gas service was improperly taken, and the benefits of the gas service enjoyed. Without such evidence, there was no basis from which the fact finder properly could infer that appellant tampered with the meter and obtained gas service without paying.

We should note that the trial court apparently recognized the weakness of the Commonwealth's case. At the close of the Commonwealth's evidence at trial, the trial judge expressed concern that the case was "highly speculative." *Id.* at 122. Outside the hearing of the jury, the court discussed the case with the prosecutor as follows:

THE COURT: That is not enough. Mere presence is not enough in any situation. He was not a tenant in this home as such.

MR. ROOMBERG [Assistant District Attorney]: He was not—

THE COURT: The home was turned over to Kim [appellant's girlfriend].

MR. ROOMBERG: He was not the lessee, but he was definitely a tenant. And ... he was the boyfriend to Kim. And he did live there, and we do have that testimony.

THE COURT: But the point is that many other people were in and out of the premises and staying there apparently. And she [appellant's mother] doesn't even know if her son was there on the date that the damage was discovered.

MR. ROOMBERG: That's true.

THE COURT: We don't know when this damage was done except apparently done from the time that the gas was turned off until the time it was discovered.

MR. ROOMBERG: Right.

THE COURT: We don't know whether it was done the very same day, a week later, or when. We know how much gas was used, but we don't know how much time it took to use that gas either or whether the thermostat was on or off and so forth. But the whole thing is,—and this concerns me very much—the only thing we have is that he presumably was in the premises from time to time. That's all.

*Id.* at 123–24. The Commonwealth itself, in its brief, recognizes the flimsiness of the proof, as it concedes that "the other two people who lived in the premises could be equally culpable." Appellee's Brief at 4.

It has long been established that "[a]lthough it is true that a conviction for theft can be based on circumstantial evidence, mere suspicion or conjecture will not suffice." *In Re Hawthorne,* 374 Pa.Super. 104, 107, 542 A.2d 167, 169 (1988). Moreover, our Supreme Court has stated that "a showing of mere presence at the scene of a crime is insufficient to support a conviction: evidence indicating participation in the crime is required." *Commonwealth v. Keblitis,* 500 Pa. 321, 324, 456 A.2d 149, 151 (1983). *See also In Re Hawthorne, supra; Commonwealth v. Key,* 342 Pa.Super. 31, 492 A.2d 48 (1985). Here, the evidence at trial showed, at best, that appellant had access to the house at some time during the period when gas services were improperly taken. Although we might find appellant's presence at the scene suspicious, suspicious behavior alone is insufficient to convict someone of a crime. *See In Re*

*Hawthorne, supra.* Accordingly, we must conclude that the Commonwealth failed to prove beyond a reasonable doubt that appellant was guilty of theft of services.

For the foregoing reasons, we vacate the judgment of sentence and order appellant discharged.

Judgment of sentence vacated; appellant discharged.